Whenever you're ready, Mr. Kimberly. No rush, but we'll hear from you. Thank you, Your Honor. May it please the Court. Your Honors, my name is Michael Kimberly. I represent the appellants in this case. Your Honors, this case presents two broad issues. The first is the First Amendment issue, and the second is the tax injunction issue. And I'd like to start with the First Amendment. As a starting point, the First Amendment claim is not moot. In our view, it never was. But in light now of the Maryland Supreme Court's decision vacating the circuit court's decision, that invalidated the underlying assessment. There's really no longer any room for dispute about this. I don't understand my friends on the other side to take a different position. And what that means is that the Court can and should, in our view, proceed to the merits of the First Amendment claim. And that's exactly as the Court did in Perry under essentially the same circumstances. A finding of mootness, which was reversed, and then the Court proceeded to address the merits of the First Amendment claim. And here we think the First Amendment claim is fairly straightforward. The pass-through provision is a content-based speech ban that fails any level of scrutiny that might be applied to it. The provision specifies that payers of the underlying assessment, quote, may not directly pass on the cost of the tax imposed by means of a separate fee, surcharge, or line item. And we know according to the party's joint stipulation at JA 178. Can we stop on the stipulation? Can parties stipulate to what the law is? Well, Your Honor, I think when you're talking about a state official who is charged by the legislature with implementing and enforcing the statute, that state official in the course of litigation, of course, can take a position. Of course you can take a position. You can stipulate. I was in awe of my question. Are we at all bound by your agreement with your colleague about what state law means? Well, I think, Your Honor, it's a matter of deference. The state courts would give deference to the binding position of... Like Chevron kind of deference? Exactly, a Chevron-type deference. And we know that how? We don't typically do that for litigating positions, right? So they're concerned about the scope of the law, so they want to narrow it down to make it less offensive. We don't generally allow litigating positions in the Chevron context to get deference. Why? Under what principle would we give deference to state officials in that context? We wouldn't in a federal case, right? The secretary of whatever agency came in and said, Oh, we've decided that we think the law means X in a brief. That wouldn't mean a whole lot to us. Your Honor, this court, if it were a federal agency, would at least get more deference to that sort of position. I think here the difference is you have a... Some people just say skid more deference. There's no deference at all. I'll grant it's not as strong as Chevron. All right, I'll give you a skid more deference if that's what you want. But why is that stipulation right? It's not a natural reading to me of the statute. I think it is, Your Honor, because the key words here are by means of. So the statute specifies that payers may not directly pass on the cost of the tax imposed by means of a separate fee surcharge or line item. So when the cost is passed on not by means of a separate fee surcharge or line item, it doesn't fall within the scope of this provision. Let's assume that I have the same threshold question that Judge Richards said about whether you can do this. I mean, I have another question about the stipulation, which is that I don't have a darn clue what the stipulation means. I have like literally no idea what the stipulation means. And so could you help me understand what that... And maybe it would be helpful to think about, like, I don't know. I have some hypos about whether you can do this, but I mean this sincerely. I genuinely have no idea what the stipulation means. So could you help me understand what the stipulation means, assuming you can stipulate what the law means? Yeah, so I think the stipulation has two elements. The first is the comptroller, again, the state official that is charged with implementing and enforcing this statute, takes the position, and we agree that we jointly stipulate, that the provision does not prevent payers of this assessment from raising prices to recoup it from downstream consumers. So in other words, it is not a price control. This statute does not forbid the raising of prices to recoup the tax. That's part one of the stipulation. Part two of the stipulation is what then is prohibited. And what's prohibited is directly passing on, where directly passing on is taken to mean passing on, again, this is the language of the statute, by means of a separate fee surcharge or line item. If you don't have the passing on by means of a separate fee surcharge or line item, it is not covered by the statute. I have no idea what that means. So let me give you a hypo that helps explain why. Does this statute say anything about the company's internal accounting? So let's say the following. Let's just keep this hypo going. On day one, this customer is being charged $100. That day one before the statute, the customer is charged $100. Day two, the company raises the price to $105. Okay. Okay. Can the company, and then the bill just still says $105. The bill the customer gets says $105. It says nothing else. But internal company accounting says additional fee to recoup this Maryland tax plus five. So on their internal QuickBooks software, there is a line that says, this is to recoup this statute. Does that violate the statute or not? I don't think it does, Your Honor.  I think would essentially read the language out of the statute, mean that it accomplishes nothing. Or it accomplishes a lot. Or it accomplishes a heck of a lot. I think you got that backwards. In other words, it's an actual prohibition on action. They can't do that. Well, I'm just saying if that's the right read. So, Your Honor, I just want to be clear. This is where we take the first part of the stipulation, that that's sort of raising costs to recoup. And maybe it would just be helpful to read the language of the stipulation itself on this point. Indirectly, right? So his point is there's a line item for $5. If instead there's no line item, they just say, you know, we think prices are going up, so we're going to charge $105 now. Well, that's not a separate fee, surcharge, or line item. That's just like inflation or whatever, right? This is a prohibition on honesty, right? Might be the way of saying it. Well, I think it wouldn't even be that. It would be a prohibition on just not taking account of it in any express way internally. But I don't – I mean, I wouldn't have taken it as a controversial point that the idea of what a surcharge or line item is is something that is stated to the customer itself that's paying the bill. I think we know this, again, from the first part of the stipulation, which I think has to be read with the second part. So the stipulation, and this is JA-178, says that the passive prohibition, quote, does not prohibit a person who derives gross revenues from digital advertising services in the state from indirectly passing on the cost of the tax imposed. Indirectly raising the prices as opposed to having an internal line item that says we're doing it because of. No, that's right. And so you have to read that with the second sentence, which is that the cost is passed on directly only when it is imposed on the customers by means of a separate fee, surcharge, or line item. Now, we – I don't think – That's Judge Hyten's hypothetical. Well, respectfully, Your Honor, I just – Because you don't think – just so I click. Because you don't think my hypo is a separate fee, surcharge, or line item. That's correct. You're talking about internal accounting. I think separate fee, surcharge, or line item is a reference to what appears on the bill or invoice or communication from the digital advertising services provider. So can I ask you a different question about whether this statute reaches any constitutionally protected conduct? Because you have a whole series of examples in your brief that you say, I think this would violate the statute. I think this is truthful speech. What if you said the following? Additional fee mandated by Maryland Digital – so now let's – I'm the customer. I get a bill. Last month it was 100. And now there's a new line on my bill that says additional fee mandated by Maryland Digital Advertising Tax, $5. First, I assume you agree that's covered by this statute, right? I'm not sure. I would – That's a separate fee line item. My bill now has a separate fee line item that says additional fee mandated by Maryland Digital Advertising Tax. Sure. So the statute prohibits that. Sure. And why couldn't Maryland prohibit you from saying that? Because that is false or misleading. Because whatever else it is, it is not mandated by the statute. That when you – when that bill says it is mandated by this law, that is a lie. And Maryland – Well, sure. And Maryland has tools at its hands to forbid, whether it's digital advertising services company or other companies, from making false and misleading statements to consumers about – But this law – I mean, among other things, it would violate this law for you to say that, right? Your Honor, it's – whether or not it would be prohibited by this law, I think is separate and apart from what makes it – from what would make it a violation of the First Amendment vis-à-vis separate provisions that would outlaw a statement like that under, say, a general unfair competition. Well, but I guess it's a question of whether this law would be invalid in all of its applications, because that, to me, sounds like an application of this law that would not be unconstitutional. Well, but what makes it unlawful is not that it is a separate fee surcharge or line item. It's that it is a misleading separate fee surcharge or line item. I mean, I think you could say that about any purported speech ban. Well, you know, there are circumstances where this speech ban covers misleading statements, and therefore there are permissible circumstances in which it could be applied. And I would say no. The law is unlawful on its face. It's unlawful in all circumstances. And although a misleading statement might reasonably be forbidden, it's rightly forbidden under other general regulations of commercial conduct. So what if the line was Maryland digital advertising tax fee? And the state took the position that that is extremely misleading to consumers, because regardless of whether it literally says you're required to do it by the law, it sure as heck implies to the—so, for example, when I'm going to get lunch after this, there's going to be a line item that says tax. And I understand, as a person who lives in the world, that the reason the merchant is collecting this tax is because they're legally required to collect this tax. Right? And so that Maryland takes the position— Well, they're legally required to pay the tax. Are they really required to collect it? They're required to pay it. Fair enough. Right? You see what I'm saying here? No, and actually sales tax is a little different, because they are legally required to collect it on behalf of the consumer. Fine. So when Amazon—the last time I ordered something on Amazon— when Amazon says $19 for tax, I understand that Amazon is collecting that money because Amazon has to collect that money from me. Right. And so if Maryland takes the position that if you have that hypothetical line, Maryland digital service tax fee, that the reasonable consumer would understand that's like the Amazon situation, and that would be false or misleading speech. Your Honor, you're describing a counterfactual scenario. The state has never put forward this justification for this provision. It certainly is not apparent anywhere in this litigation or the record underlying adoption of the pass-through prohibition. It has never been their position that it's misleading to explain to consumers why prices are going up. And, you know, if I could, I'll point the court just to the examples that we give on page 26. This is speech that is straightforwardly being forbidden by this law. January 2022 advertising service is $900. Maryland digital advertising tax recoupment fee, $100, total $1,000. That's unlawful. Now that same invoice just said January 2022 advertising service is $1,000 and left out the rest of the speech, identifying the fact and magnitude of price increases attributable to state laws raising these sorts of assessments, that would be lawful. Can I ask you a question about the Injunction Act issue? Because there's something in your brief that I candidly would like to get your response to. So page 39, you say the following. Courts have traditionally given weight under the TIA to contemporaneous cases construing the meaning of tax under the tax clause. C.E.G., a Supreme Court decision with no insight whatsoever, and a Ninth Circuit decision. So I've read both of those. And with all due respect, I don't read either one of those cases as remotely standing for that proposition. So would you like to identify for me what authority you think supports the proposition? Because I think the two cases you cite, neither one of them says that. So is NFIB against Sebelius and Beiter Brothers both? So Sebelius, in fact, says, in the context of the Anti-Injunction Act, don't actually do that. So I don't know where it says that. Right. So actually, I think NFIB is probably even more helpful than Beiter Brothers in this way. It acknowledges that under the Anti-Injunction Act, the analysis turns on the label that Congress uses. So when Congress wants to suggest that an assessment is covered by the AIA, it calls it a tax. And what's notable about the analysis in that case, the court points to Drexel Furniture and Graham. Those two cases concerned the same assessment against the conduct of employing underage children, which at the time was not unlawful under federal statutes. And what the court said is, we held in Graham an AIA case that it is covered by the Anti-Injunction Act, even though substantively it is not really a tax. And we held substantively it is not really a tax in Drexel Furniture, which was a tax clause case. Okay. So far, we are nowhere close to explaining how that supports the proposition you're citing for. Well, I guess what I'm suggesting, Your Honor, is NFIB against Sebelius is citing these cases as an indication of how to go about, one, the relevance of tax, pre, well, there was an AIA case, but tax clause cases to interpretation and application of the AIA. Right? So it's a tax clause case being cited for interpretation of the meaning of tax for the AIA purposes. And Inviter Brothers is the same. It's citing the head money cases. I believe it also cites Drexel Furniture. Okay. For generally just the proposition that, look, what's relevant here when we're interpreting the word tax is pre-TIA cases interpreting the word tax that would inform Congress when it was acting in 1937 what that concept included. There's no other reason to be citing tax clause cases, and I would point out my friends on the other side cite tax clause cases extensively in their own view about what constitutes a tax for TIA purposes. Your Honor, I see I'm out of time. I wonder if I'm happy to reserve the balance of my time. Thank you. Ms. Bernhardt, we're happy to hear from you. Thank you, Your Honor. May it please the Court.  But, you know, I had earlier planned to begin with the Tax Conjunction Act because that presents a threshold issue of jurisdiction of the federal courts to hear any of this case, including the First Amendment issue, in our view. And in the district court there was a lot of time spent, I guess there's been a lot of time spent here on what the appropriate standard of review is for determining whether, you know, the Tax Conjunction Act applies, whether it's a tax or a penalty. But whichever test is applied, you know, the choice of test is not outcome determinative to this case because under any of the tests this is a tax and not a penalty, and the Tax Conjunction Act raises a firm bar to federal court jurisdiction over this entire action. I've got a couple of questions about it. This is a factual matter. Are there any other Maryland taxes or fees that are imposed on gross revenue? Yes, Your Honor. What? There's, well, there's a, well, no, actually I'm thinking of an out-of-state case. Yeah, so Maryland, the term is imposed on gross revenue, right? I mean, you understand what I'm trying to get at. Is there a Maryland tax or fee that is understood that way? Well, Maryland has, you know, other gross receipts tax, but not being a tax lawyer, I can't really cite the court to it. Are there any other Maryland taxes, and if you don't know, that's totally fine, right? I'm not asking you to answer questions you don't know, but if we don't know of examples, that's an acceptable answer. I just want to know what they are. Are there other Maryland taxes that set the tax? I'm pretty sure, Your Honor, that there are taxes on gross receipts in Maryland, but I can't cite to the court. Okay, are there any other Maryland taxes that set the rate of taxation based on extraterritorial conduct? No, Your Honor, not that I'm aware of. But we did cite in our briefing that there's, you know, purposes, as a constitutional matter, it's permissible to determine the rate that way as long as the actual revenue tax is inside Maryland, which is what this law does. What about examples of Maryland taxes that narrowly target companies, such as this one? Do you have any other examples of Maryland taxes or fees that target companies in the manner that you've done here, that Maryland has sort of created this story, you know, fairly narrow, and then it's carved out a whole group of that, so that it's a fairly narrowly focused set of entities that are subject to the tax? Are there other such taxes? Well, there are all kinds of taxes. Like what? That's what I want to know. That's what I'm asking, right? I want examples. Well, there's gambling taxes, there's tobacco taxes, there's alcohol taxes, there's gasoline taxes, there's telecommunications taxes. There are all kinds of taxes that are product or industry specific. But it seems like you mentioned tobacco, you mentioned gambling, you mentioned alcohol. As a descriptive matter, I guess I would describe myself as likely to be very surprised if I didn't learn that the number of people who pay those taxes every year dwarfs the number of entities that every year will pay this tax, right? I mean, I suspect everybody in this room has paid those taxes, right? I mean, you buy a beer, you buy the liquor store, right? You buy a pack of cigarettes, right? You're paying all those taxes, right? So those are consumers. I mean, there are literally millions of people that are paying those taxes. That's true, Your Honor. But the tests that the Supreme Court and that this Court has employed don't turn on, you know, whether it's a particular regulation. I'm just asking, are there other – that's what I'm trying to ask. Are there other similarly narrowly tailored taxes? I understand that you have an argument for you can have an extremely narrowly tailored tax that sets the rate based on external, extraterritorial conduct that taxes gross receipts, right? I'm just asking, are there any others? Because if there are no others that fit this category, that's suggestive that, like, you're really just trying to punish this, you know, very narrow set of companies, right? I mean, that's what I'm trying to get at. If you don't do this in any other context, right, if in every other tax that you have you are setting the rate based on something other than extraterritorial conduct, if in every other case that you've got, right, that you're not setting it based on a percentage of gross revenues, right, if every other case you've got applies to a much broader group of people, we can keep going. Those are just suggestions, right? I'm not saying that that's a dispositive inquiry. But all of those are suggestions that this ain't a tax, right? This is a hammer. No, Your Honor. I think— No, what? No, my facts are wrong or no, my conclusion is wrong? Well, I disagree— You agree— Well, I would like to articulate the legal standards that this Court has employed, which would make the answer to your question, no, that doesn't suggest that it's a penalty rather than a tax. And if one looks at Valero and— But what is the question? Valero lays out three factors, right? But it lays out three factors to answer the question, right? The question that they're asking, is this primarily for revenue or is this primarily for regulation or punitive punishment? That's the question. You can't look at the factors without understanding what question we're asking, right? It's not three factors in the abstract. It's three factors that help inform the question. And the question is, is this primary for revenue or is this primarily because you don't like their people, right? You want to punish them for doing something. I don't think that's the question, Your Honor. I think that the Court pointed out in Valero and in Tolson that, first of all, you start with the presumption that you're interpreting the tax broadly for the purposes of the jurisdictional inquiry. And then you look at the actual legislation and the legislative policies stated in the statute, not what legislators were commenting on, you know, in the lead-up. I'm not asking about the legislators, right? What I'm trying to say is the question that we're asking is, is this primarily for revenue or is this primarily for punishment? That's the question, right? And, you know, your response to that is don't look at the legislators. I'm not looking at the legislators at all. I'm just trying to ask, what is the question? The question is, is this a tax for revenue or is this a penalty for punishment? Yes, Your Honor. And to answer the question, you have to look at the legislation itself. This Court pointed that out in both the direct TV v. Tolson and in Valero. And if you look at page 125 of Tolson and in Valero, page 134. And what the Court pointed out is that you don't look at the, you know, the political context or the commentary of legislators. You look at the legislation itself. You look at the purpose of, you know, is it going to raise revenue and what's the revenue going to be used for? And here, and those answers are found in the fund statute itself, which is in the education article at 1301 and 1302. And the purpose of this legislation is to raise money for education, public school education in Maryland. To do what? To counteract the false and misleading statements of your opponents. No, Your Honor. That's not what the fund statute says. It's silent on that. It's to be used generally for public school education. And because the statute is silent, your proposition is that we must take that there is no purpose for it. Right? We got to ignore the reality of why this was enacted because they weren't straightforward enough to put the reason in the statute? The statute states the legislative policy. It's to improve public education in the state. And the digital ad tax statute, you know, directs the revenue to that fund. And that's the sole purpose of that fund. It has nothing to do with counteracting the effect of social media or anything else. It's to fund public education in the state. It's a revenue-raising statute. It, you know, it lacks the Siena requirement. You know, it's collected by the comptroller as part of the tax system. And it does not punish any unlawful conduct.  And because individual legislators may have been motivated to vote for it because of their individual motivations, you know, the court has to look at it. I mean, don't we often look, when we ask about the purpose of a statute, I mean, think about this often in the equal protection context, but in lots of other contexts, when we're asking questions, we ask the question of, what is the purpose? And we don't always limit ourselves to the words in the statute. Right? And merely because you have a couple of stray legislators that say something, that might or might not be sufficient if we're looking at something like an Arlington Heights kind of analysis. Right? But we often look beyond the text to find purpose in statutes. Right? Maybe that's a good idea. Maybe it's not. But it doesn't seem unusual to do it here. Well, but that really doesn't play into any of the tests the court has adopted for determining whether it's a tax or a penalty for purposes of the Tax Injunction Act. Now, that may come into play when you're talking about, you know, is it outside the taxing power? Because, you know, Congress only has enumerated powers. And so if you look at the child labor cases or if you look at, you know, cases where the Chicago Board of Trade case, which was, you know, the Hill case. In both those cases, you know, it was a tax, but it didn't have a revenue raising purpose that was apparent on the face of the statute. Because it was being used as a hammer. If the company did what the Congress wanted, they wouldn't have to pay the tax. So, you know, it was an attempt to, you know, subject companies to regulation that Congress didn't have the power to regulate. And they were trying to use the taxing power as a hammer to get the companies, you know, to knuckle under. And if they did that, they wouldn't have to pay the tax. And that's a completely different scenario than what you have in the TIA cases where what you're looking at is, you know, does it raise revenue? And let's take the malaria test. What entity imposes the charges? Well, here it's the legislature. So that's a tax marker. What population is subject to it? Who collects it? The Commissioner of Revenue, not, you know, not the, you know, the Social Media Police. And then what purpose is served by the use of the monies obtained by the charge? And here it's public school education generally. It's not, you know, fixing, you know, the harms done by companies or, you know, it's not, you know, counteracting these harmful algorithms that are directing, you know, harmful content. It's none of that. It's just public education generally is the blueprint for Maryland Fund. It's, you know, it's designed to improve public school education in the state, which benefits the public generally. And so the district court, you know, applying the malaria test got it exactly right. You looked at the statute, looked at the stated legislative policy, you know, not what an author of a law review article thought, not what, you know, one of the legislatures, you know, said early on, you know, in the legislative process. You know, what you have to look at is, you know, the end result. You know, what does the statute say? What's the plain meaning? And there's no reason to go behind it to look at what individual legislators are thinking. If we disagree with that idea that we cannot go behind the statute, is that fatal for you? I mean, so if we actually look at it and we take all the statements that you've sort of obliquely referenced about the article and what the purpose of the statute was and where it came from and why the legislator said these things, if we did sort of an Arlington Heights kind of analysis, do you agree that that's fatal? No, Your Honor, but I don't know how you get there when you're applying the Tax Injunction Act, which is a jurisdictional rule. If you look at the Empress Casino case, which is cited, it's a Seventh Circuit case, which is a fairly recent case where, you know, the court goes through, you know, it's gambling, of course. But the court was pointing out that, you know, when you're trying to jurisdictional rule, you need a clear rule. I mean, you need to know. I mean, you know, parties need to know. Can I file suit or not? You know, am I going to drag the comptroller, you know, or the tax collector, you know, through two years of litigation and then get it, it'll be dismissed because, you know, it's a jurisdictional rule and, you know, it's a complete waste of everybody's time. You know, these should be clear rules. I don't disagree with that, but you've got to take that up with the Supreme Court, who told us we have to evaluate whether it's a tax or a penalty. We've called that in the federal system because we say if Congress says it's a tax, it's a tax. But they've not told us to do that. They've told us we have to decide whether it is a tax or a penalty. And I agree with you. There's not a whole lot of clarity about that. But I think the Supreme Court's test on whether it's a tax or a penalty is very clear. You know, it's four parts. Does it produce some revenue? Does it lack a scienter requirement? Is it collected through the general tax collector? And does it not punish unlawful conduct? And our tax meets all those criteria. There's no unlawful conduct here. It's not like, you know, the cases where, you know, at Perth Ranch, for example, where you had to be actually arrested for a crime before you had to pay the tax. I mean, it was only criminals, right? Only people who were drug dealers were subject to it. Can I take you to the First Amendment? First question is the one I asked your friend on the other side. So let's say this is the, their price was $100. Today their price is $105. All the bill says is $105. But their internal QuickBooks accounting, they literally, in response to the statute, they literally added a line of their internal QuickBooks accounting that said $5, reason, Maryland digital tax. As a descriptive matter, do you think that violates the statute if the company does that? They're building, well, it's like their internal accounting for building into their cost is the way I'm understanding the question. Okay, so your answer is you don't think it violates the statute to do that? No, they're allowed to include it in their overhead. It's kind of like, you know, I guess I would compare it to. No, so, okay, so let me, so then the problem is once you say that, once you admit that, this is literally a prohibition on what you can say. So they're allowed to add a line to their internal QuickBooks accounting that says $5, reason, this law. They can do that. They just can't say that. So that seems to tease squarely off the first of it, that this is literally a prohibition on what you can say. Well, I don't agree with that because I think what they're allowed to do is build it into their costs on their overall price. But it's a regulation of tax incidence. And the idea is. A regulation of tax what? Incidence. And the idea. What does that mean? It means, in other words, the company has to, you know, it has to weigh, you know, are they going to pass the whole cost on to the consumer or not? Because that's going to raise their overall bottom line. No, no, no, but it doesn't do that at all. Because you said they can do that. They just can't tell anybody they're doing it. Well, that's not what I meant to say. What I meant to say was. All right, so I'll give you my focus. Let him ask the question again and give him a different or same answer. But ask the same question and see if we get a different answer. The day before this law is enacted, the fee is $100. The day after this is enacted, someone in their accounting department literally modifies their QuickBooks to say, insert new code, $5, reason, Maryland Digital Price Act. But all that happens the next month is the consumer gets a bill that says amount due $105. Has that company violated this statute? Well. It seems like a pretty important and basically yes or no question. Has that company violated this statute? I don't see how they violate the statute by documenting their internal cost. Okay. So is that no? No, they haven't violated the statute. Okay, so then the minute. Because they're not directly passing it on. So then the minute that they, the only thing they now change is they add a $5, Maryland Digital Service Tax Fee, $5, Bill 105. They've now violated the statute. So it's literally a prohibition on what they can say. I don't think that's the way it works economically because what they're doing is they've made an internal decision. They're going to pass on the entire cost of the fee and their final price. And they've documented that. There's nothing. And they're allowed to do that. Okay, so let me give you another then. They just can't document it to the customer? They just can't tell the customer? So long as they keep it a secret, they can do it. No, they can. That's what you just said, though. They can make it part of their overhead, right? They can make it part of their overhead. For their internal accounting purposes, it's not part of overhead. It's now a line in their internal accounting that says, this is why we're doing it. Well, then they are directly passing it on, and it would violate the statute. Okay, can I ask you another one then? Let's say the bill is just 105. It's blank. And they include in the envelope an insert that says, Dear customer, you may have noticed that your fee is higher this month than it was last month. Although the bill does not tell you why that is, let's tell you why that is. And that is because the Maryland legislature has passed this tax. That's why your fee is higher. Would that violate the statute? They can provide information. The statute does not prohibit providing information. What the statute prohibits is the conduct of shifting the, of billing the customer for the tax. In other words, you can't compete with other companies on a bottom line price and then add the tax on separately at the end. I mean, the customer is entitled to know the bottom line price and to compete with others on the price. And, you know, if the company wants to, you know, build the whole cost of the tax into the bottom line price and maybe make them less competitive with other, you know, with other companies, they can do that. But the economic, you know, we cited in footnote 13 to our brief, the economic reality is and what the legislature was getting at was that a lot of companies will choose not to raise their costs and pass the whole thing on because they want to compete on the bottom line price. And so, in other words, they can build it into their cost. Maybe they'll choose not to build the whole thing into their cost and the end cost to the consumer will be lower than if they could just, you know, pass it on and it would end up being, you know, they would end up being shifted because the legislature wanted to have the companies, you know, take this money out of, you know, maybe take it out of their profits or, you know, find some other way, you know, to absorb that cost rather than passing it on to the end user. And, you know, that's all conduct. The prohibited conduct is, you know, shifting your tax incidence, your tax obligation to the end user. It's the conduct that's prohibited. And the by means of clause just are ways of engaging in that conduct. And in other words, the statute would mean the same thing if you struck that clause because you can't pass it on directly. And those are ways to implement your illegal conduct. They're operative words. And to say because they're words, they're protected speech, that's just like saying the restricted covenant in, you know, the deed, you want to put this restricted covenant in your deed. No, you can't do that. Well, yes, I can because, you know, I'm using words to do it and therefore it's protected. It's not. It's prohibited conduct. It's operative language. And, you know, the First Amendment doesn't protect it. Thank you, counsel. We're happy to hear from you, Mr. Kimberly. Thank you, Your Honor. Just on the First Amendment, I'll say I thought the stipulation was clear. I'm sort of confused after this exchange, too. I think probably the appropriate thing at this point, Your Honors, is just to acknowledge that the issue is not moot. It's obviously not moot. No one's saying it's moot and remand to the district court for reconsideration of the First Amendment claim. And if they're reneging on the meaning of the statute, perhaps also the Dormant Commerce Clause challenge, if it's a price control, would be the appropriate next step so far as Count 4 is concerned. So far as Counts 1 through 3 are concerned, I'd like briefly just to address the Tax Injunction Act issues. I'm sorry. Can you say the last part about the Dormant Commerce Clause? Is that in Count 4, that's what y'all withdrew in the stipulation? Right. So if they're now saying, which I take Maryland to be saying, that they now disagree with their prior stipulation, your point is, is when it goes back, if they're disagreeing with their prior stipulation, then you ought to be able to re-raise the Dormant Commerce Clause issue since they've changed their position. That's right. I mean, if this is actually a price control that prohibits payers from passing it on, then we ought to be able to press forward with our Dormant Commerce Clause challenge. In all events, a remand for reconsideration on, or rather for first consideration on Count 4 is appropriate. As to Counts 1 through 3, you know, I think it's important just to step back and recognize, first, the Tax Injunction Act's tax fee distinction is not a question about what's lawful and what's unlawful. The question is just, do we get pre-enforcement judicial review in federal court? The Tax Injunction Act is about preventing companies from interfering with tax collection. Historically, against the backdrop that it was enacted, companies were inhibiting states' ability to raise funds so that they could operate today. I think the point of this distinction is that the Congress acting in 1937 didn't mean to protect from pre-enforcement judicial review provisions that function as penalties or regulations, but that are dressed up in, you know, the clothing of tax in an effort to insulate them from federal court judicial review. And our position is that's essentially what's going on here. We have an extraordinarily burdensome assessment that the U.S. Trade Representative has said is not an ordinary or appropriate way to go about taxing, and that is indeed, for that reason, because it has that character, punitive. It is imposed against a narrowly and expressly targeted universe of companies when the legislature realized that they wrote the statute too broadly so that it brought in companies they didn't mean to target. They amended it to take those companies out. It is targeting these companies... Can I ask you about the narrowness question? Sure. I had a question in your briefs. So I'm looking at the... You focus on just how few companies there are that have global gross revenues exceeding $15 billion, and you want that to be the denominator of companies, or you at one point suggest in the brief that should be the denominator. But that's subpart D of a statute that has four subparts. So I don't begrudge you from doing this, but this seems to be trying to artificially restrict the denominator. The denominator seems like companies subject to the tax, and that is all companies covered by A, B, C, and D, not just D. I think it is further suggestive of its punitive character that this tax has this graduated approach. Progressive taxes are inherently punitive? That would be quite a striking thing for us to say. When you're talking about a gross revenue tax that assesses an amount of 15%, which often approaches the profit margin of these companies, so it essentially erases... High taxes are presumptively punitive? That again would be... I mean, given the marginal income tax rate in the U.S. until the 1980s, that would be a striking thing to say. Your Honor, I'm not saying anything is presumptively indicative. This is a totality of the circumstances test. It weighs strongly in favor of finding that this assessment is punitive, that it is extraordinarily burdensome, unusually burdensome. This is not within the range of normal. I think it's further indicative that individual companies, Amazon, Facebook, Google were called out by name and happen to be the ones that fall within that highest, the very small handful of companies that fall within that highest level of assessment. I think it's further indicative that they're called out expressly as bad actors by witnesses testifying before the Senate, by the Senate president himself, who is the principal sponsor of this provision, and explained that... Her response is, no, no, no, no. You've got to ignore all that, right? Because the purpose in the text itself doesn't say that. What's your response to that? Why should we look behind the statute at all? Your Honor, because it's a purposive inquiry, and it's the way... We can determine purpose based on text. In fact, we do that often, right? That's sort of the predominant way of understanding statutes now. Yeah, I mean, I think to understand why, however, the legislature has set this money aside in a segregated fund that is not commingled with the rest of the general treasury and cannot be used for general operation of the government, it makes sense to look at the explanations given by the lawmakers who are responsible for the statute. And they make very clear that the reason is that, in their view, these companies, what they perceive to be their bad conduct has caused externalities that require remediation. And the best way to remediate the damage that they believe these companies have caused is by allocating this money to that segregated fund, which is used for public education. And for those reasons, Your Honor, we would ask not only for a remand on Count 4, but a remand also on Counts 1 through 3. Thank you, counsel. If you would be so kind to come up and greet us here, we would appreciate it. And after we're agreed, we're going to take a short five-minute break. Thank you. Thank you. We would come down next if I can't walk. Thank you for your argument. This Honorable Court will take a brief recess.
judges: Julius N. Richardson, Toby J. Heytens, Henry F. Floyd